UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

TONY PACHERILLE,

                Plaintiff,                              3:13-cv-789
                                                                  (GLS/DEP)
        v.

BRIAN BURNS,

                Defendant.
_____

**APPEARANCES:**                              **OF COUNSEL:**

**FOR THE PLAINTIFF:**
Office of Frank Policelli               FRANK POLICELLI, ESQ.
10 Steuben Park
Utica, NY 13501

**FOR THE DEFENDANT:**
Hancock, Estabrook Law Firm      TIMOTHY P. MURPHY, ESQ.
100 Madison Street, Suite 1500     JAMES P. YOUNGS, ESQ.
Syracuse, NY 13202

**Gary L. Sharpe**
**Chief Judge**

## MEMORANDUM-DECISION AND ORDER

### I. Introduction

Plaintiff Tony Pacherille commenced this action against defendant

Brian Burns,[1] individually and as an Otsego County Court Judge, pursuant

---

[1] Pacherille's amended complaint also named as defendants the County of Otsego, the City of Oneonta, and the City of Oneonta Police Department. (Am. Compl., Dkt. No. 22.) However, the parties stipulated to dismiss these defendants, and only Judge Burns remains.

to 42 U.S.C. § 1983, alleging violations of his First and Fourth Amendment rights. (Am. Compl., Dkt. No. 22.) Pending is Judge Burns' motion to dismiss the amended complaint, (Dkt. Nos. 20, 23), and Pacherille's letter requesting oral argument, (Dkt. No. 12). For the reasons that follow, Judge Burns' motion is granted and Pacherille's request is denied as moot.

## II. Background[2]

The genesis of this action is the New York State criminal case of Pacherille's son, Anthony Pacherille, Jr., over which Judge Burns, an Otsego County Court Judge, presided. (Am. Compl. ¶ 10.) Pacherille Jr., then sixteen years old, was charged with, among other things, "attempted murder in the first degree as a hate crime, as the result of an incident in which he shot a classmate who was an African American." *People v. Pacherille*, 106 A.D.3d 1136, 1137 (3d Dep't 2013).[3] On April 29, 2011,

---

(Dkt. Nos. 33, 34.)

[2] Unless otherwise noted, in discussing the background of this action, the court "confine[s] its consideration to facts stated on the face of the [amended] complaint, in documents appended to the [amended] complaint or incorporated in the [amended] complaint by reference, and to matters of which judicial notice may be taken." *Serdarevic v. Centex Homes, LLC*, 760 F. Supp. 2d 322, 328 (S.D.N.Y. 2010) (quoting *Leonard F. v. Israel Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (internal quotation marks omitted)). The facts are presented in the light most favorable to Pacherille.

[3] "A court may take judicial notice of matters of public record, including . . . decisions in prior state court adjudications." *Johnson v. Pugh*, No. 11-CV-385, 2013 WL 3013661, at *2 (E.D.N.Y. June 18, 2013).

Pacherille Jr. pled guilty to attempted murder in the second degree. *Id.*; (Am. Compl. ¶ 10.)

Prior to sentencing, defense counsel requested that Pacherille Jr. be sentenced as a youthful offender. (Am. Compl. ¶ 10.) In support of that request, defense counsel submitted sixty-two letters, one of which was from Pacherille. (*Id.*) Among other things, Pacherille's letter pleaded that Judge Burns, "[a]s a father of a boy Anthony's age," consider the "undeveloped and perplexing" mind of an adolescent boy. (Dkt. No. 22, Attach. 1 at 1.) In May 2011, also prior to the sentencing, Pacherille helped create "coophallofshame.com," a website which "contained numerous satirical messages highly critical of Judge Burns," the District Attorney, and the father of the shooting victim.[4] (Am. Compl. ¶¶ 11-12.) Ultimately, in July 2011, Judge Burns sentenced Pacherille Jr. as an adult, in accordance with the plea agreement. (*Id.* ¶¶ 10, 12); *see Pacherille*, 106 A.D.3d at 1137.

After the sentencing, Pacherille planned to protest Judge Burns'

---

[4] In a sworn deposition, which is attached to the amended complaint, Judge Burns further stated that he believed that Pacherille "created a fake Facebook page using District Attorney John Muehl's name," on which Judge Burns' photo was posted, along with "false statements of a graphic sexual nature of a relationship between" Judge Burns and the District Attorney. (Dkt. No. 22, Attach. 2.) Judge Burns also noted that a second Facebook page was created in his name, which was quickly taken down. (*Id.*)

decision. (Am. Compl. ¶ 12.) Pacherille picked up a gathering application, seeking permission from the City of Oneonta to publically protest Judge Burns' decision. (*Id.* ¶ 13.) While reviewing the application, Pacherille noticed that it required that the place of protest be listed. (*Id.*) On August 2, 2011, Pacherille went to Judge Burns' residence to confirm his address and measure the sidewalk. (*Id.*; Dkt. No. 22, Attach. 2.) When Pacherille went to Judge Burns' residence, only Burns' wife was home. (Dkt. No. 22, Attach. 2.) Judge Burns' wife answered the door, and soon asked that Pacherille leave her porch. (*Id.*)

Soon after Pacherille left, Judge Burns called the police, and on August 5, 2011, he filed a complaint and signed a sworn deposition, charging Pacherille with harassment and claiming that Judge Burns believed Pacherille's behavior "serve[d] no legitimate purpose," that Pacherille's only intentions were to "intimidate, harass[,] and annoy [him]," and that he feared for himself and his family. (*Id.*; Am. Compl. ¶¶ 14, 23.) Pacherille then received a phone call from the Chief of Police, who told him to stay away from Judge Burns' house. (Am. Compl. ¶ 23.) On August 3, 2010, Pacherille received a Cease and Desist letter from the New York State Unified Court System, directing Pacherille to "refrain from any

4

harassing, offensive or otherwise disruptive contact or communication with Judge Burns or any member of his family." (Dkt. No. 22, Attach. 3.) The harassment charges were eventually dismissed on February 16, 2012. (Am. Compl. ¶ 16.)

### III. Standard of Review

The standard of review under Fed. R. Civ. P. 12 is well established and will not be repeated here. For a full discussion of the standard, the court refers the parties to its decision in *Ellis v. Cohen & Slamowitz, LLP*, 701 F. Supp. 2d 215, 218 (N.D.N.Y. 2010).

### IV. Discussion

Judge Burns argues that Pacherille's amended complaint must be dismissed, principally because he is entitled to absolute judicial immunity—or, at least, qualified immunity. (Dkt. No. 20, Attach. 2 at 3-10; Dkt. No. 28 at 3-5; Dkt. No. 30 at 1-2.) Pacherille contends that Judge Burns is entitled to neither absolute nor qualified immunity. (Dkt. No. 29 at 3-6.) The court agrees with Judge Burns.

### A. Absolute Judicial Immunity

"It is well settled that judges generally have absolute immunity from suits for money damages for their judicial actions." *Bliven v. Hunt*, 579

F.3d 204, 209 (2d Cir. 2009) (citations omitted). This immunity is "from suit, not just from ultimate assessment of damages." *Mireles v. Waco*, 502 U.S. 9, 11 (1991) (citation omitted). The 1996 Congressional amendments to § 1983 bar injunctive relief, unless a declaratory decree was violated or declaratory relief was unavailable. *See Montero v. Travis*, 171 F.3d 757, 761 (2d Cir. 1999). Therefore, a judge is immune from all forms of suit unless he has acted either beyond his judicial capacity, or "in the complete absence of all jurisdiction." *Mireles*, 502 U.S. at 12.

In determining whether or not a judge acted in the clear absence of all jurisdiction, the judge's jurisdiction is "to be construed broadly, and the asserted immunity will only be overcome when the judge clearly lacks jurisdiction over the subject matter." *Ceparano v. Southampton Justice Court*, 404 F. App'x 537, 539 (2d Cir. 2011) (internal quotation marks and citation omitted). "Whether a judge acted in a judicial capacity depends on the nature of the act [complained of] itself, i.e., whether it is a function normally performed by a judge, and [on] the expectations of the parties, i.e., whether they dealt with the judge in his judicial capacity." *Id.* (internal quotation marks and citation omitted). Moreover, if the judge is performing in his judicial capacity, immunity does not give way even if "the action he

6

took was in error, was done maliciously, or was in excess of his authority." *Id.* (internal quotation marks and citation omitted).[5]

Here, Judge Burns argues that *Huminski v. Corsones*, 386 F.3d 116 (2d Cir. 2004) is directly on point. (Dkt. No. 22 at 4-8.) In *Huminski*, Judge Corsones presided over Huminski's criminal case. 386 F.3d at 122. After the disposition of his criminal case, Huminski, among other things, began parking his van, which he covered with signs condemning the judicial system, in the parking lot of the courthouse where Judge Corsones typically sat. *Id.* Additionally, on a day when Judge Corsones was assigned to another courthouse fifty miles away, Huminski parked his van at that courthouse, and covered his van with signs criticizing her. *Id.* at 124. Consequently, Judge Corsones, concerned about her safety and the safety of her family, requested that court personnel contact law enforcement and have Huminski removed from the courthouse; she also

---

[5] Judicial immunity shields judges from suit to the extent that they are sued in their individual capacities. *See Martinez v. Queens Cnty. Dist. Attorney*, No. 12-CV-06262, 2014 WL 1011054, at *8 n.8 (E.D.N.Y. Mar. 17, 2014); *McKnight v. Middleton*, 699 F. Supp. 2d 507, 521-25 (E.D.N.Y. 2010), *aff'd*, 434 F. App'x 32 (2d Cir. 2011). The Eleventh Amendment shields judges from suit to the extent that they are sued in their official capacities. *Martinez*, 2014 WL 1011054, at *8 n.8. Here, Judge Burns is sued, for only money damages, in both his official and individual capacities. (Am. Compl.) As discussed at length below, Judge Burns is entitled to judicial immunity to the extent that he is sued in his individual capacity. Further, to the extent that he is sued in his official capacity, Judge Burns is immune under the Eleventh Amendment. *See Hilton v. Wright*, 928 F. Supp. 2d 530, 546 (N.D.N.Y. 2013).

requested that he be served with notices of trespass, prohibiting him from entering onto her personal residence and former law office, where her then-husband practiced. *See id.* at 125-27. After receiving the notices of trespass and leaving the premises without incident, Huminski brought suit against Judge Corsones, among others, for violation of his First Amendment rights. *Id.* at 129.

The Second Circuit concluded that Judge Corsones was entitled to absolute judicial immunity from any liability arising from her participation in the decision to issue the trespass notices. *Id.* at 140-41. The court noted that, "Corsones engaged in a judicial act because the general nature and function of her actions were substantially judicial." *Id.* at 140 (citing *Barrett v. Harrington*, 130 F.3d 246, 257-58 (6th Cir. 1997) (concluding that a judge was entitled to judicial immunity for actions that included letters she wrote on judicial letterhead to state and federal prosecutors requesting an investigation of the plaintiff, against whom she had previously rendered judgment, after concerns arose for her safety based on the plaintiff's actions)). Importantly, the court noted that "[t]here was a nexus between [Judge Corsones's] actions . . . and Huminski's criminal case before her. Huminksi's letters, complaints, and protests regarding [Judge] Corsones

8

stemmed directly and proximately from . . . his criminal case over which she presided. And Corsones's actions regarding the decision to issue the trespass notices to Huminski stemmed directly from Huminski's protests." *Id.* at 141. Judge Corsones's actions, the court held, "were clearly designed to address . . . [Huminski's] conduct, and directly related to her role in adjudicating the case which engendered [Huminski's] conduct in the first place." *Id.* (internal quotation marks and citation omitted).

    The court further concluded that Judge Corsones's actions were "essentially in her judicial capacity," because she presided over Huminksi's criminal case, and Huminski's subsequent complaints and protests regarding her "derived from and focused on [Judge] Corsones's judicial performance in vacating his plea agreement." *Id.* Finally, the court noted that "the principles underlying judicial immunity suggest that Corsones's actions should be protected." *Id.* Specifically, the court stated that:

> [e]xposing [Judge Corsones] to liability for her part in the decision to issue the trespass notices in response to Huminski's activities, which were in response to her judicial decisions in a case before her, would be inconsistent with the protection of the independence of her decisionmaking. A judge cannot be expected regularly and dispassionately to make decisions adverse to overtly hostile parties if subsequent actions to protect herself, her staff, and those in her courthouse from such hostility may result in the rigors

9

of defending against—and even the possibility of losing—lengthy and costly litigation.

*Id.*

While *Huminski* is not identical to this case, the court is persuaded by the factual similarities.[6] Here, although Judge Burns did not preside over proceedings involving Pacherille as a party, he did preside over Pacherille's son's criminal proceeding, which was the catalyst for Pacherille's online criticisms and attempted protests. (Am. Compl. ¶ 15 ("It was only through his capacity as a County Court Judge that [Judge Burns] was able to have access to the [pre-sentencing] letter to use it to allege a course of conduct."); *id.* ¶ 26 ("The action of Defendant Burns . . . [was] only made possible because of the privilege of his employment.").)

Further, Pacherille was actively involved in the proceeding—as evidenced by his pre-sentencing letter—and he was extremely vocal and critical about both the proceedings and Judge Burns, as demonstrated by his online criticisms of Judge Burns. (Dkt. No. 22, Attach. 1; Dkt. No. 22, Attach. 2; Am. Compl. ¶¶ 11-12.) Indeed, Pacherille's "complaints . . . and

---

[6] In an attempt to distinguish *Huminski* from the case at bar, Pacherille notes that the court in *Huminski* found that "the actions of the judge . . . did violate [the defendants'] rights," but that "[t]he only reason immunity was granted in that case was because 'this individual right was not well-settled at the time of the events at issue.'" (Dkt. No. 29 at 5 (citing *Huminksi*, 386 F.3d at 121).) Pacherille, however, confuses and conflates *Huminski*'s discussion of absolute judicial immunity with its discussion of qualified immunity.

10

protests" regarding Judge Burns "stemmed directly and proximately" from Judge Burns' decision to sentence Pacherille's son as an adult. *Huminski*, 386 F.3d 116 at 141. Moreover, Judge Burns' actions regarding the decision to file harassment charges against Pacherille "stemmed directly from" Pacherille's protests. *Id.* Indeed, Judge Burns' conduct was "directly related to [his] role in adjudicating the case which engendered [Pacherille's] conduct in the first place." *Barrett*, 130 F.3d at 259. But for Judge Burns' involvement and sentencing decision in Pacherille's son's criminal trial, Pacherille would have had no reason to protest Judge Burns in the first place, and, in turn, Judge Burns would have had no reason to file harassment charges against Pacherille. In fact, the amended complaint states that Pacherille intended on specifically protesting Judge Burns' sentencing decision. (Am. Compl. ¶ 12.) Finally, the principles underlying judicial immunity, discussed above, are evident here: exposing Judge Burns to liability for his decision to file harassment charges in response to Pacherille's activities, which were in response to Judge Burns' judicial decisions in a case before him, would be inconsistent with the protection of the independence of his decisionmaking. *See Huminski*, 386 F.3d at 141.

Under these circumstances, it is reasonable to conclude that Judge

Burns was performing a judicial act and acting in his judicial capacity.[7] Further, construing Judge Burns' jurisdiction broadly, as the court must, it cannot be said that he was "clearly lack[ing]" jurisdiction. *Ceparano*, 404 F. App'x at 539. Thus, Judge Burns is entitled to absolute judicial immunity.

B. **Qualified Immunity**

Qualified immunity generally protects governmental officials from civil liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). However, even if the constitutional privileges "are so clearly defined that a reasonable public official would know that his actions might violate those rights, qualified . . . immunity might still be available . . . if it was objectively reasonable for the public official to believe that his acts did not violate those rights." *Kaminsky v. Rosenblum*, 929 F.2d 922, 925 (2d Cir. 1991); *see Wagner v. Swarts*, 827 F. Supp. 2d 85, 101 (N.D.N.Y. 2011), *aff'd sub nom. Wagner v.*

---

[7] On the one hand, Pacherille argues that Judge Burns was not acting in his judicial capacity, and instead was satisfying a personal vendetta, but, on the other hand, Pacherille discusses Judge Burns' "official act" of reviewing Pacherille's sentencing letter, and concedes that Judge Burns acted "in his capacity as a judge." (Dkt. No. 29 at 3-4.) While the court notes, as did the court in *Huminski*, that "it can be difficult to distinguish between those actions that are judicial," and those that are not, 386, F.3d at 138, as discussed above, the nexus between Judge Burns' role as a judge and Pacherille's conduct is sufficiently close to entitle Judge Burns to judicial immunity.

*Sprague*, 489 F. App'x 500 (2d Cir. 2012).

Here, assuming, without deciding, that Pacherille has demonstrated a violation of a clearly established right,[8] it is evident from the face of the complaint[9] that it was objectively reasonable for Judge Burns to believe that his conduct—complaining to the police about a perceived threat to his and his family's safety—did not violate Pacherille's rights. *See Rohman v. N.Y.C. Transit Auth.*, 215 F.3d 208, 217-18 (2d Cir. 2000) (holding that transit authority supervisor was entitled to qualified immunity because "it was objectively reasonable for [him] to believe that he came within the safe harbor for the 'mere reporting' of suspected crime"); *Barrett*, 130 F.3d at 260 n.22 (holding that judge was entitled to absolute immunity, but noting that "even if absolute immunity did not apply, qualified immunity would

---

[8] While the court views Pacherille's complaint in the light most favorable to him, it is far from clear that he has established violations of his established constitutional rights. For instance, with respect to his Fourth Amendment malicious prosecution claim, Pacherille must allege, among other things, that "the defendant initiated a prosecution against [him]" and "a sufficient post-arraignment liberty restraint to implicate [his] Fourth Amendment rights." *Rohman v. N.Y.C. Transit Auth.*, 215 F.3d 208, 215 (2d Cir. 2000). Here, the court is not persuaded that Pacherille has sufficiently alleged that Judge Burns "initiated a prosecution" against Pacherille for malicious prosecution purposes; "[t]he mere reporting of a crime to police and giving testimony are insufficient; it must be shown that defendant played an active role in the prosecution, such as giving advice and encouragement or importuning the authorities to act." *Id.* at 217 (internal quotation marks and citations omitted). Aside from simply providing information, there is no allegation in the amended complaint that Judge Burns assisted the prosecution.

[9] "[W]e see no reason why even a traditional qualified immunity defense may not be asserted on a Rule 12(b)(6) motion as long as the defense is based on facts appearing on the face of the complaint." *McKenna v. Wright*, 386 F.3d 432, 436 (2d Cir. 2004).

certainly apply to Judge Harrington's letters to prosecutors"). Thus, Judge Burns is, at least, entitled to qualified immunity, and his motion to dismiss must be granted.

## V. Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that Burns' motion to dismiss (Dkt. Nos. 20, 23) is **GRANTED**; and it is further

**ORDERED** that Pacherille's amended complaint (Dkt. No. 22) is **DISMISSED**; and it is further

**ORDERED** that Pacherille's letter requesting oral argument (Dkt. No. 12) is **DENIED**, and it is further

**ORDERED** that the Clerk close this case; and it is further

**ORDERED** that the Clerk provide a copy of this Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

July 3, 2014
Albany, New York

*Gary L. Sharpe*
Chief Judge
U.S. District Court